FILED
04 JUN 16 AM 10: 26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RONALD CADE, et al., | ] |
| Plaintiffs, | ] |
| v. | ] CV-01-BE-1022-S |
| NORFOLK SOUTHERN CORP., | ] |
| Defendant. | ] |

ENTERED
JUN 16 2004

## MEMORANDUM OPINION

This case comes before the court on Defendant Norfolk Southern Corp. ("NSC")'s "Motion for Summary Judgment with Respect to Remaining Claims of Plaintiffs Ronald Cade, James Drake, Dexter Massey, Willie Murphy and Kenneth Thomas" (Doc. 31). Having considered the parties' briefs and evidentiary submissions, and having heard oral argument at a hearing on June 3, 2004, the court hereby GRANTS Defendant's motion in its entirety for the reasons stated on the Record, and discussed briefly below.

*A. Summary Judgment Standard*

When a district court reviews a motion for summary judgment under Federal Rule of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by



establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law. All evidence and inferences to be drawn therefrom should be considered in the light most favorable to the non-moving party. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court finds no genuine issues of material fact in this case, and thus only continues to determine whether NSC should be granted judgment as a matter of law.

### B. Disparate Discipline Claims

Plaintiffs Cade, Drake, Murphy and Thomas, all African-American employees of NSC, allege that they received more severe discipline from NSC than other employees because of their race in violation of 42 U.S.C. § 1981. Because no direct evidence of racial discrimination exists in this case, the court must employ the familiar *McDonnell Douglas* burden-shifting analysis.[1] To establish a *prima facie* case of disparate discipline, a plaintiff must prove (1) the plaintiff belongs to a racial minority; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees of other races more favorably; and (4) he was qualified to do the job. *Jones v. Bessemer Carraway Med. Center*, 137 F.3d 1306, 1310 (11th Cir. 1998).

To prove a materially adverse job action, "the employer's action must impact the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's

---

[1] *See generally McDonnell-Douglas v. Green*, 410 U.S. 792 (1973) (establishing burden shifting framework).

2

employment...an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).

To show that employees are similarly situated, "the plaintiff must show that the "employees are similarly situated in all relevant respects...[I]n determining whether employees are similarly situated...it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

1. Ronald Cade

Plaintiff Cade cannot establish that he suffered a materially adverse employment action at the hands of NSC, and thus his disparate discipline claim must fail. In January 2000, Cade, a train conductor, was working on a train with a "bad order" car that had to be removed. When he worked to removed the "bad order" car, Cade forgot to set the brakes on the cars behind the "bad order" car, and, as a result, those cars rolled down a hill the train was parked on. Cade admits the cars would not have rolled downhill had he remembered to set the brakes on those cars. As punishment, NSC gave Cade a written counseling letter under that employer's "START" discipline program.

A NSC employee's receipt of a "START" counseling letter does not incur any loss of pay, promotion opportunity or job status. When written measures "do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline," such measures are not actionable. *Davis, supra,* 245 F.3d at 1241. The court finds as a matter of law that receipt of a "START" counseling letter did

not impact the terms and conditions of Cade's employment in a real and demonstrable way, and is thus insufficient to fulfill the "adverse job action" element of the plaintiff's *prima facie* case. *Jones*, 137 F.3d at 1310.

Alternatively, the court finds that Cade is not similarly situated in all relevant respects to his proffered white comparator, Terry Mason. Cade has only established[2] that he and Mason both experienced the escape of several train cars rolling loose from their trains; Cade has not established that Mason lost his train cars as the result of a NSC rule violation. Instead, Mason's incident resulted from equipment malfunction, not forgetting to set the brakes. Cade presented insufficient evidence for a reasonable jury to find the two employees participated in the same, or similar, misconduct; thus, the court cannot conclude Cade has properly identified a similarly situated comparator. Without this comparator, Cade cannot establish a *prima facie* case of disparate discipline. Summary judgment is thus granted in favor of NSC as to Cade's claim.[3]

2. James Drake

Like Cade, Plaintiff Drake cannot establish a *prima facie* claim for disparate discipline, and thus his claim must also fail as a matter of law. On July 27, 2001, Drake, a train conductor, erroneously instructed his engineer, a white employee named Craig Chappell, to navigate their train into a nearby coal car, "sideswiping" it in violation of NSC operating rules. Drake only received a "START" counseling letter for his misconduct, which this court finds to be

---

[2] The court uses the word "established" lightly. The only evidence of Mason's runaway-train-car incident was presented to the court in the form of an unsigned, undated statement. Such evidence falls short of the requirements established in Fed. R. Civ. P. 56 (e); however, the court has considered such evidence in its deliberation of this motion.

[3] Additionally, Cade failed to amend his complaint to reflect this disparate discipline claim. Cade's claim originates from interrogatory responses, hardly the proper method to litigate one's claims. The court entertains this claim as part of its charge to "secure the just...determination of every action," Fed. R. Civ. P. 1.

insufficient to establish a materially adverse employment action for the reasons stated earlier..

Alternatively, Drake has failed to establish that he is similarly situated in all relevant respects to his proffered comparator, Craig Chappell. The undisputed evidence demonstrates *Drake's* indiscretion, not Chappell's, caused those employees' train to sideswipe a nearby coal car and violate NSC rules. While both Drake and Chappell have equal expectations placed on them by NSC to observe all applicable railroad rules and regulations, the court will not interpret these expectations as an invitation to impose some sort of joint responsibility, as the plaintiffs urge. Because Drake cannot demonstrate that he and Chappell were equally culpable for the sideswipe in question, he cannot establish his *prima facie* case. Thus, summary judgment is granted in favor of NSC as to Drake's claim.

### 3. Willie Murphy

Similarly, Plaintiff Murphy cannot establish a *prima facie* case of disparate discipline because he cannot identify a similarly situated comparator. The undisputed evidence reflects that conductor Andrea Crump, the proffered white comparator, notified Murphy that a safety banner had been placed across the railroad tracks by NSC management. Murphy, the train's engineer, reassured Crump that he had control of the train; nevertheless, the train ran through the safety banner, incurring a NSC rules violation. Based on these facts, Crump received a shorter suspension than Murphy.

The court finds that Crump and Murphy had not committed similar enough misconduct to warrant the same punishment; thus, Murphy cannot establish his *prima facie* case. Summary judgment should, thus, be granted in favor of NSC on Murphy's claim.

### 4. Kenneth Thomas

Finally, Plaintiff Thomas cannot establish a *prima facie* case of disparate discipline because he, too, lacks similarly situated white comparators. On November 11, 1999, Thomas received a 65-day suspension for running his train through a NSC test banner. Thomas received this punishment, rather than the standard 30-day suspension usually given for test banner operations, because of his extensive disciplinary history.[4] The plaintiff has failed to show that either Michael Allen or W.R. Hester, the proffered white comparators, had such a disciplinary history. Employees' disciplinary histories are a proper consideration for the court when deciding whether those employees are similarly situated as a matter of law. *See, e.g., Knight v. Baptist Hospital of Miami*, 330 F.3d 1313 (11th Cir. 2003) (two nurses found not "similarly situated" when one nurse had a substantially worse disciplinary record than other nurse). Thus, because Thomas cannot identify a comparator who is similarly situated to him in all relevant respects, a *prima facie* case cannot be established for this November 1999 incident.

On October 21, 2001, Thomas exited his stopped train to get some food. As a result, Thomas delayed his train and a following train for fifteen minutes, violating NSC operating rules. Thomas was initially dismissed for the rule violation, but this penalty was later commuted to a 30-day suspension. Thomas' engineer and proffered white comparator, Craig Chappell, received no punishment. The undisputed facts show that Chappell was unaware Thomas had left the train, and even if Chappell *did* have this knowledge, he had no authority to order Thomas to stay on the train or to move the train in Thomas' absence. NSC concluded, on the basis of these

---

[4] Thomas had been suspended for operating rule violations in 1980, 1981, 1983, 1993, 1994 (twice), and had even been dismissed from employment in 1998 for running through a test banner.

facts, that Thomas was solely responsible for the train delay; accordingly, only Thomas was punished. Thomas argues that a train's conductor and engineer are equally responsible for ensuring operating rules are followed, and thus he and Chappell should receive the same punishment. The court finds this argument meritless, for obvious reasons: equal expectations of rule compliance do *not* necessarily amount to equal culpability when those rules are broken. Because Thomas cannot demonstrate that he and Chappell were equally culpable for delaying the two trains in question, he cannot show that he and Chappell are similarly situated in all relevant respects. Thus, a *prima facie* case of disparate discipline has not be established for the October 2001 incident.

Even if Thomas could establish a *prima facie* case of disparate discipline for the 1999 or 2001 incidents, the court finds Thomas has presented insufficient evidence for a jury to find that NSC's articulated non-discriminatory reasons for Thomas' discipline are pretexts for discrimination. No evidence has been presented reflecting that Thomas' race was considered during his employment; to the contrary, the evidence provided reflects NSC's careful efforts to create and distribute an equal employment opportunity/anti-harassment policy.

For all these reasons, Thomas' disparate discipline claim fails, and summary judgment should be entered in favor of the defendant on this claim.

### C. Dexter Massey: Racial Harassment–Hostile Work Environment Claim

Plaintiff Massey alleges that the terms and conditions of his employment were altered by a racially hostile work environment in violation of 42 U.S.C. § 1981. To establish a *prima facie* hostile work environment claim, a plaintiff must prove the following:

7

(1) that he belongs to a protected group;
(2) that he was subjected to racial harassment;
(3) that the harassment was based on race;
**(4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and**
(5) that there is a basis for holding the employer liable for the harassment, either directly or indirectly.

*Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742 (1998) (emphasis added). To determine whether harassment is "sufficiently severe or pervasive," a court must look to the totality of the circumstances, including:

(1) the frequency of the discriminatory conduct;
(2) the severity of the conduct;
(3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and
(4) whether the conduct unreasonably interferes with an employee's work performance.

*Harris v. Forklift Sys. Inc.*, 510 U.S. 17 (1993). Plaintiff Massey alleged nine incidents of harassment over the four-year period allowed by § 1981's statute of limitations.[5] The sporadic harassment consisted of racially insensitive statements and graffiti in the form of racial slurs. None of the harassment was specifically directed to the plaintiff. Most of the insensitive statements alleged were not heard personally by the plaintiff, but instead were reported to him "second-hand." The graffiti was applied by unknown persons on different pieces of railroad property, not personal property. Finally, the alleged harassment only caused Massey to take one afternoon off from work; Massey offered no other evidence of interference with his work performance.

---

[5] The United States Supreme Court has recently held that a claim brought pursuant to §1981 has a uniform four-year statute of limitations. See *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836 (2004).

8

Given these undisputed facts, and considering the factors laid out in *Harris, supra*, the court finds that the harassment of which Plaintiff Massey complained of, while regrettable, is not sufficiently severe or pervasive to be actionable. Massey cannot establish a *prima facie* case of racial discrimination, and thus summary judgment is granted for NSC on this claim.

### D. Conclusion

For all these reasons, and for those reasons stated on the Record, the court GRANTS Defendant's motion for summary judgment in its entirety. The court will enter a separate order granting summary judgment for the Defendant.

The case shall continue as to Plaintiff Karl Henry, but the case remains STAYED pending the conclusion of Mr. Henry's military service.

DONE and ORDERED this 16th day of June, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE